**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gradient Analytics, Inc., et. al., ) | No. CV-10-0335-PHX-FJM |
| ) | |
| Plaintiffs, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Biovail Corporation, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

This is an action for malicious prosecution. We have before us defendant Biovail Corporation's motion to dismiss for lack of personal jurisdiction and for failure to state a claim (doc. 27), plaintiffs' response (doc. 29), and defendant's reply (doc. 31).

Plaintiffs' claims arise out of two lawsuits filed in New Jersey in 2006. Defendant Biovail Corporation ("Biovail") is a Canadian pharmaceutical company. Plaintiff Gradient Analytics, Inc. ("Gradient") is a stock research firm based in Arizona. Plaintiffs Donn Vickrey and James Carlton Carr Bettis are co-founders of Gradient.

**I**

In reviewing a motion to dismiss for failure to state a claim, we assume all facts and inferences in favor of the nonmoving party, Fed. R. Civ. P. 12(b)(6); Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006), and in ruling on a motion to dismiss for lack of personal jurisdiction, we take uncontroverted allegations as true and resolve conflicts in the

nonmoving party's favor. Love. v. Associated Newspapers, Ltd., ___ F.3d ___, 2010 WL 2680922, *3 (9th Cir. 2010). We therefore take as true the following facts alleged in plaintiffs' complaint. The parties' dispute originated in Biovail's financial problems in 2003 and 2004, and Gradient's reports on the company during this period. Gradient reported on (1) Biovail's improper attribution of research and development expenses to its entity Pharmatech; (2) Biovail's problems in collecting accounts receivable, which Gradient ultimately attributed to Biovail's repeated recognition of $8 million in revenue from a transaction that was never actually completed; and (3) the questionable integrity of Biovail's management, following reports that the company paid doctors to prescribe its drug Cardizem LA. During this same period, Biovail claimed in several financial statements that a shipping accident delayed delivery of $10-$20 million worth of its product Wellbutrin, a number it later revised down to $5 million.

Biovail's stock prices fell 43.3% between June 8, 2003 and October 7, 2003. Shareholders subsequently filed 13 class action lawsuits against the company, which were consolidated as In re Biovail Corporation Securities Litigation, CV-03-8917 (S.D.N.Y. 2003). The shareholders alleged that Biovail knowingly made false profitability projections about Cardizem, implemented a program that improperly paid doctors to prescribe Biovail's drugs with intent to deceive investors, knowingly mislead investors about the launch of Cardizem LA, and misrepresented the effects of a trucking accident on Biovail's earnings.

Additionally, the Securities and Exchange Commission (the "SEC") filed a complaint against Biovail, alleging that Biovail had (1) improperly moved $47 million in research and investment expenses onto the financial statements of Pharmatech, and (2) used a fictitious bill and hold transaction to concoct $8 million in revenue. Biovail eventually entered into a $10 million consent decree with the SEC and paid $6.5 million to settle similar allegations with the Ontario Securities Commission. The Department of Justice later brought criminal charges. Biovail admitted criminal liability in connection with improper marketing of Cardizem LA, and paid a fine of $22 million. In 2009, Biovail paid $138 million to settle the class action shareholder litigation.

1           Meanwhile, on February 26, 2006, Biovail sued several financial firms and analysts, including plaintiffs, in the Superior Court of New Jersey (the "Biovail action"). Biovail alleged a conspiracy in violation of New Jersey's Civil Racketeer Influenced and Corrupt Organizations Act, claiming that plaintiffs had knowingly issued materially false reports and manipulated the timing of the reports' release in order to drive down Biovail stock prices as part of a scheme through which clients could profit from short-selling the stocks. Biovail v. S.A.C. Capital Mgmt., ESX-L-1583-06 (N.J. Super. Ct. 2006). Biovail accused Bettis and Vickrey of improperly commingling their activities at Gradient with their work at a management and investment company founded by Vickrey, and at a hedge fund co-founded by Bettis. The complaint also accused Vickrey and Bettis of misrepresenting Gradient's independence, and called Gradient's service a sham and its reports biased. In 2006, Biovail's CEO repeated some of these allegations in a segment on CBS's 60 Minutes. Biovail also hired private investigators who directly contacted several Gradient employees.

After filing the Biovail complaint in New Jersey Superior Court, Biovail orchestrated the drafting and filing of a complaint in the United States District Court for the District of New Jersey on behalf of Biovail stockholders, asserting the same allegations presented in the Biovail action. Del Giudice v. S.A.C. Capital Mgmt, LLC et al., CV-06-01413 (D.N.J. 2006) (the "Del Giudice action"). The Del Giudice court found that in drafting both the Biovail and Del Giudice complaints, Biovail improperly used documents obtained through subpoena in In re Biovail Securities Litigation. In February, 2009, the District Court dismissed the Del Giudice action without prejudice on defendants' Rule 11 sanctions motion. In August, 2009, the New Jersey Superior Court dismissed the Biovail complaint for failure to state a claim and lack of personal jurisdiction over nearly all the defendants (including present plaintiffs). Plaintiffs' action for malicious prosecution followed dismissal of the claims against them.

**II**

We first address defendant's claim that we should dismiss the action for lack of personal jurisdiction over Biovail. See Fed. R. Civ. P. 12(b)(2). It is plaintiffs' burden to demonstrate that we have jurisdiction over the defendant. Brayton Purcell, LLP v. Recordon

& Recordon, No. 07-15383, 2010 WL 2135302, at *2 (9th Cir. 2010). Plaintiffs need only make a prima facie showing of jurisdictional facts to withstand a motion to dismiss, and we resolve all disputed facts in the plaintiffs' favor. Id. When sitting in diversity, we exercise personal jurisdiction if it is permitted by Arizona's long-arm statute and comports with due process under the United States Constitution. Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 415 (9th Cir. 1997). Because Arizona's long-arm statute allows the exercise of personal jurisdiction "to the maximum extent permitted by the Constitution of this state and the Constitution of the United States," Ariz. R. Civ. P. 4.2(a), our jurisdiction turns on due process. See Menken v. Emm, 503 F.3d 1050, 1056 (9th Cir. 2007). To satisfy due process, a nonresident defendant must have at least minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. Boschetto v. Hansing, 539 F.3d 1011, 1015–16 (9th Cir. 2008).

Plaintiffs argue that we have both general and specific jurisdiction over Biovail. Because we conclude that we have general jurisdiction, we need not reach the issue of specific jurisdiction.

General jurisdiction exists where the defendant has "substantial" or "continuous and systematic" contacts with the forum state, even if the case is unrelated to those contacts. Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d. 1163, 1171 (9th Cir. 2000). The standard for establishing general jurisdiction is "fairly high," and defendant's contacts must approximate physical presence. Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). We consider such factors as whether "the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Id. Other indicia include "longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." Tuazon, 433 F.3d at 1172.

Plaintiffs argue that defendant sells over $10 million in pharmaceuticals in Arizona annually, transports and stores drugs in Arizona, maintains relationships with Arizona

wholesalers, markets its products to Arizona doctors, advertises in Arizona and attends healthcare seminars in the state. Defendant counters that it is not licensed to do business in Arizona, does not own any real property here, has no Arizona address or telephone number, has no agent for service of process, and its web site is only passive (i.e. consumers cannot purchase products through it). Biovail admits to only minor contacts: (1) past employment of between two and ten salespersons in Arizona (which ended in 2007) and the current employment of one independent salesperson; (2) product sales to an independent distributor in Arizona; and (3) participation in an industry conference in Arizona.

This case is similar to Gator.Com Corp. v. L.L. Bean, Inc., 341 F.3d 1072 (9th Cir. 2003). In that case, the court concluded that a Maine corporation was subject to general jurisdiction in California due to millions of dollars in sales through catalogs and a web site that functioned like a "virtual store," as well as targeted email solicitations to state residents, extensive national advertising that reached California, and its purchase of products from California vendors. Id. at 1074–78. The court found that these factors outweighed the absence of other traditional jurisdictional considerations, e.g. authorization to do business in California, an agent for service of process there, and a requirement to pay California taxes. Id.

We conclude that just as was true for L.L. Bean in California, "there is nothing random, fortuitous, or attenuated about subjecting Biovail to jurisdiction in Arizona because the company has deliberately and purposefully availed itself, on a very large scale, of the benefits of doing business within the state." Id. at 1078–79. Biovail's most significant forum contact is its $10 million in annual pharmaceutical sales, a substantial quantity. While it is clear "that a corporation does not necessarily submit to general jurisdiction in every state in which it merely sells a product," Tuazon, 433 F.3d at 1174, Biovail's annual Arizona sales are millions of dollars greater than L.L. Bean's California sales. To be sure, unlike L.L. Bean, Biovail sold its products through wholesalers and maintained only a passive web site, through which individuals could not buy pharmaceuticals. Nevertheless, direct consumer

purchase of prescription drugs is very rare and the ubiquity of third parties, i.e. doctors, pharmacists and distributors, should not insulate Biovail from jurisdiction in a state where it sells so much. Moreover, Biovail's national advertising reaches Arizona and Biovail markets to Arizona doctors. See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 570 (2d Cir.1996) (exercise of personal jurisdiction proper where defendant had: (1) nearly $4 million dollars in Vermont sales between 1989 and 1993 and filing of Vermont tax returns; (2) relationship with five independent dealers and four authorized builders; (3) product support; (4) national advertising that reaches Vermont and direct marketing to at least three Vermont firms; and (5) more than 150 employees visits over six years, and one employee stationed in Vermont for one year).

Even if there are sufficient contacts to support general jurisdiction, our exercise of jurisdiction must be reasonable. Gator.Com Corp., 341 F.3d at 1080. It is Biovail's burden to present a compelling case that jurisdiction is unreasonable in order to defeat jurisdiction. Id. at 1081. We consider seven factors: (1) the extent of Biovail's purposeful interjection into Arizona affairs; (2) its burden in defending itself in Arizona; (3) the extent of conflict with the sovereignty of Biovail's home state; (4) Arizona's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the Arizona forum to the plaintiffs' interest in convenient and effective relief; and (7) the existence of an alternative forum. Id at 1080–81. Defendant does not address these factors in its motion or reply.

The first factor favors jurisdiction. The company sells around $10 million worth of pharmaceuticals in the state annually, and in conjunction with filing an action against the Arizona-based parties, Biovail also allegedly conducted a targeted investigation and public relations campaign in Arizona. The second factor weighs slightly against jurisdiction; Biovail is based in Ontario, Canada, several thousand miles from Phoenix. However, there is no showing that litigation in Arizona would be any more burdensome than in any other place in the United States. The third factor favors jurisdiction. Canada has minimal interest

in this litigation. Almost all the underlying conduct occurred in the United States. The fourth factor also weighs in favor of jurisdiction. Although the underlying lawsuits were filed in New Jersey, Arizona has an interest in adjudicating a dispute involving damages to an Arizona company and Arizona residents. Fifth, Arizona is as efficient a district as any. Sixth, Arizona is important to plaintiffs' interest in effective relief because they are based here, and some of the conduct about which they complain occurred here. Finally, there is an alternative forum, New Jersey, where defendant would likely be subject to personal jurisdiction.

In sum, a majority of factors support jurisdiction. We thus conclude that it is reasonable for us to exercise jurisdiction over defendant Biovail.

**III**

We next address defendant's contention that plaintiffs fail to state a claim for malicious prosecution. See Fed. R. Civ. P. 12(b)(6).

**A**

The parties dispute whether Arizona or New Jersey law applies. When sitting in diversity, we apply Arizona choice of law rules. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021 (1941); Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002). Arizona follows the Restatement (Second) of Conflict of Laws (1971). See Gemstar Ltd v. Ernst & Young, 185 Ariz. 493, 500, 917 P.2d 222, 229 (Ariz. 1996). For malicious prosecution actions, Section 155 of the Restatement provides that the governing law is "the local law of the state where the proceeding complained of occurred, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties." Restatement (Second) Conflict of Laws § 155.

Defendant contends that because the underlying proceedings occurred in New Jersey, New Jersey law governs. Plaintiffs believe that Arizona law should control, under the

Restatement's exception for a state with a "more significant relationship." A comment to the Restatement explains it is more likely that a state other than the one where the proceeding occurred would have a more significant relationship in the "relatively rare situations where the state where the proceeding complained of occurred bears little relation to the occurrence and the parties." Restatement (Second) Conflict of Laws § 155 cmt. b. In the Biovail action, the Superior Court of New Jersey found that there was no link between New Jersey and the alleged injury or any action that lead to the injuries, and that the court did not have jurisdiction over plaintiffs. Complaint, Ex. E at 14. Plaintiffs also argue that applying New Jersey law to a malicious prosecution claim when the court lacked personal jurisdiction over plaintiffs would condone forum shopping and lead to abusive litigation practices.

In determining if another state has the most significant relationship, we consult the seven factors listed in § 6(2) of the Restatement.[1] Restatement (Second) Conflict of Laws § 155. Factor (a), the needs of the interstate system, weighs in favor of applying New Jersey law. While there is an important interstate need to prevent forum shopping, that concern is outweighed by the states' common interest in respecting each other's right to police the use of its own courts. See Restatement (Second) Conflict of Laws § 6 cmt. d. Factor (b), relevant policies of the forum, is neutral. Factor (c), the policies and interests of Arizona and New Jersey, favors New Jersey law. We disagree with plaintiffs' contention that because the parties and actions at issue in the underlying litigation had no connection to New Jersey, New Jersey has no interest in this case. To the contrary, "the paramount interest in cases involving the torts of malicious prosecution and abuse of process is that of the state whose courts were allegedly abused." Tripodi v. Local Union No. S38, 120 F.Supp.2d 318, 321 (S.D.N.Y.

---

[1] Defendant notes that plaintiffs have not identified a "particular issue" of their claim that has a more significant relationship to Arizona. See Restatement (Second) Conflict of Laws § 155. Comment b to § 155 directs us to §§ 156–74, which explain that the elements and defenses for a tort claim should be resolved under the law of the state which has the most significant relationship to the parties and the underlying occurrences. See Restatement (Second) Conflict of Laws §§ 145, 156–74. We therefore apply the "most significant relationship" test to the action as a whole, as the results apply to each part of the claim.

2000) (applying Restatement (Second) Conflict of Laws § 155). Factor (d), the protection of justified expectations, slightly favors New Jersey law because a party could reasonably expect the law of the state where he filed suit to govern a subsequent malicious prosecution claim. Factor (e), the policy underlying the field of law, strongly favors New Jersey. Rules governing malicious prosecution claims allow each state to balance the prevention of systemic abuse with the assurance that prospective litigants are not unduly inhibited from accessing the courts. See Restatement (Second) Conflict of Laws § 155 cmt. b. Factor (f), certainty, predictability and uniformity of results, slightly favors applying the law of the state where the litigation occurred. Finally, factor (g), ease in determining and applying the law, is neutral.

In sum, five of these seven factors favor the application of New Jersey law, and two are neutral. Therefore, we apply New Jersey law to malicious prosecution, and decline plaintiffs' request to apply the Restatement's "rare" exception.

**B**

The New Jersey equivalent of malicious prosecution is malicious use of process. The elements of the claim are: (1) an action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to initiate the action; (4) the action was terminated favorably to the plaintiff; and (5) the plaintiff has suffered a special grievance caused by the institution of the underlying action. LoBiondo v. Schwartz, 199 N.J. 62, 90, 970 A.2d 1007, 1023 (N.J. 2009) ("LoBiondo II"). Defendant argues only that plaintiffs have failed to plead the necessary special grievance.

Malicious use of process claims "are not favored causes of actions" in New Jersey. Giri v. Rutgers Cas. Ins. Co., 273 N.J. Super. 340, 347, 641 A.2d 1112, 1115 (N.J. Super. App. Div. 1994). This "special grievance" element reflects New Jersey's concern that these actions "create the possibility that a party will be forced to defend against one of these claims based on little more than having filed, and lost, in a court proceeding as to which the original defendant harbors resentment and anger." LoBiondo II, 199 N.J. at 91, 970 A.2d at 1023.

The special grievance must be equivalent to an interference with one's liberty or property. The cost of defending against litigation is not sufficient. Id. at 96, 970 A.2d at 1026. Moreover, "mental anguish, emotional distress, or loss of reputation from the filing of a complaint are not the special injuries required to sustain a malicious prosecution action." Turner v. Wong, 363 N. J. Super. 186, 205, 832 A.2d 340, 351 (N.J. Super. App. Div. 2003).

Plaintiffs argue that they suffered two special grievances. First, they claim that Biovail's litigation chilled their speech, which was an interference with their liberty, a special grievance. See Liobondo II, 199 N.J. at 96, 970 A.2d at 1026; Turner, 363 N. J. Super. at 205, 832 A.2d at 351. Plaintiffs contend that they engaged in public speech regarding Biovail's improper corporate practices, which were a matter of public concern because Biovail is publicly traded. They argue that Biovail's litigation was a successful attempt to silence them, and precluded plaintiffs from participating in the public debate about Biovail.

Plaintiffs rely on two New Jersey cases holding that a restriction of the constitutional right to protest and communicate regarding public issues constitutes a special grievance. See LoBiondo v. Schwartz, 323 N.J. Super. 391, 733 A.2d 516 (N.J. Super. Ct. App. Div. 1999) ("LoBiondo I"); Baglini v. Lauletta, 338 N.J. Super. 282, 768 A.2d 825 (N.J. Super. Ct. App. Div. 2001). In LoBiondo I, an objector protested a land-use application to expand a beach club, and the applicant sued the objector for defamation and other claims. 323 N.J. Super. 391, 400, 733 A.2d 516, 519. The court held that the challenge to those freedoms attendant upon the filing of a SLAPP suit, a "strategic lawsuit against public participation," constitutes "a sufficient interference with one's liberty to satisfy the special grievance element." Id. Similarly, in Baglini, the court found that the impairment of a party's right to challenge a rezoning decision could be a special grievance. 338 N.J. Super. at 301–02, 768 A.2d at 836. Taking plaintiffs' allegations as true, Gradient raised serious concerns about malfeasance by a major, publicly-traded company, and Biovail sought to silence plaintiffs' legitimate criticism through meritless lawsuits. By alleging this intended and achieved restriction on plaintiffs' liberties, plaintiffs have satisfactorily pled the special grievance element of

malicious use of process.

Second, plaintiffs also claim that they suffered an economic special grievance. They argue that Biovail's lawsuits permanently damaged Gradient's reputation, reduced the value of the business, caused Gradient to permanently close its Carlsbad, California office, cost Gradient existing and potential customers, and forced plaintiffs Bettis and Vickrey to sell their company Equity Methods for much less than the originally agreed upon price. Plaintiffs claim they lost millions as a result of the suit, and compare their damages to those in Giri, 273 N.J. Super. at 349, 641 A.2d at 1117. In that case, the New Jersey court found that because an allegedly malicious medical malpractice suit had driven the plaintiff out of business, although temporarily, plaintiff could state a claim for a special grievance. Id. at 349–50, 641 A.2d at 1117. Defendant counters that plaintiffs here allege only a loss of business, rather than a total closure of business, and so cannot establish a special grievance.

We reject defendant's interpretation of Giri as insisting that plaintiffs must have ceased all operations for some period of time in order to make a claim for an economic special grievance. Rather, that case required the plaintiff to show harm beyond "routine 'damages' in the usual malpractice suit – the cost and time to defend and the possible blemish to a professional reputation." Id. The plaintiff in Giri ultimately returned to practicing medicine, while plaintiffs here claim to have permanently lost a part of their business. If proven, plaintiffs' economic damages could exceed those alleged in Giri.

Defendant also argues that plaintiffs' alleged economic harm is too speculative to constitute a special grievance. Plaintiffs must prove that their economic losses, were "the direct result of the malicious prosecution itself." See Venuto v. Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart, P.C., 11 F.3d 385, 390–91 (3d Cir. 1993). However, at this juncture, we assume all facts and inferences in favor of the nonmoving party, and thus conclude that plaintiffs have adequately alleged an economic special grievance. See Fed. R. Civ. P. 12(b)(6); Marder, 450 F.3d at 448. Because plaintiffs have sufficiently pled a special grievance, we conclude that they have stated a claim for malicious use of process,

- 11 -

pursuant to New Jersey law.

Therefore, **IT IS ORDERED DENYING** defendant's motion to dismiss (doc. 27).

DATED this 26th day of July, 2010.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge